The next case. Our next case is Yerian v. Webber. Yerian v. Webber. Good morning. May it please the Court. My name is Michael Nordella. I'm here on behalf of the appellant Keith Yerian. The issue before the Court today regards an individual retirement account, specifically the creditor protection status of an individual retirement account. owner of that account has engaged in a disqualifying transaction, which could or will result in the loss of tax-exempt status for that account or plan governing that account eventually by the IRS or tax court. The specific issue is this gap period between when the disqualifying event has occurred and when this final determination is made by the IRS or tax court. And so the bottom line question is, is the IRA seizable by a creditor during that period? Let me ask you a jurisdictional question first. Yes, Your Honor. Go to that. Why should we take jurisdiction on this matter now? Your Honor, as— There are things that are not yet complete that have to be completed in order for the denial of the exemption to be upheld. Why shouldn't we determine this is not final? And when it is final, you can come back. Well, Your Honor— The trustee says he's got to seek an order approving administrative expenses. He's got to prepare a final accounting. He's got to prepare a distribution report to be reviewed by the trustee in the Department of Justice. Pending approval of all of that, a notice of the final report must be provided to the debtor. It must be provided to all interested parties, at which time they will have an opportunity to object in the bankruptcy court. Then, assuming there are no objections, and assuming the bankruptcy court approves, it would enter an order approving the accounting, discharging the trustee, canceling the bond, and closing the estate. But until all of that happens, isn't this at least fairly arguably premature, not final, and we ought not to step down the road of answering this question? Thank you, Your Honor. So, the first issue of context is, yes, the trustee has to perform those duties, but that's really all that's left. There was a two-day trial on this issue. The court entered a final order. The trustee has the money from the IRA. And if he does the final report, he's going to distribute it, at which point all of the issues will be moot because the money will be gone. Is there any other assets in the estate other than this money? There's a judgment that he received at the same trial against a third party, and he's currently in the process of bringing a state court lawsuit against that third party to try to collect some extra money for the estate. Right now, the corpus of this money is the only asset in the estate? There may be some other minor assets from some vehicles, Your Honor, but this is the major asset. I was thinking about the same question. It's kind of difficult here because he can't come up with a distribution final plan until he knows whether this money is part of it or not. So, you can't then close out the bankruptcy without saying, everybody, you get this, you get that. This is the largest asset, I assume. I don't know how much money. It was about $350,000 in the IRA. And I don't know what the value of the homestead that he's chasing against the debtor's wife in that third party asset. It may be somewhat close to $350,000, but I agree that it's a No way to close it out until you know whether you have this asset. I'm not saying we should take jurisdiction because of that, but that goes to whether or not it's final enough. And as to this asset, to go ahead and have a ruling whether it's exempt or not. I mean, that's the other side. Yes, Your Honor, I agree. And I think while most circuits would agree that denials of exemptions are final, we do have the case matter of Wizz in the 11th Circuit where a denial of exemption was determined to not be final. But the case discusses a three-part test for an exception where it is final. And I think it meets all parts of those three-part tests as well. The first is, is this order independent from other claims? I think it's clear that this order on this exemption is independent from any other claims. Is it clear the record is complete in this case? I'm not sure I understand the question, Your Honor. The record is very messy in this case because That's why I asked the question. Yeah, what happened is, is the trial I asked the question because it may or may not be distinguishable from Wizz depending on whether or not the record is complete. I understand, Your Honor. I think that the record does not discuss any issues related to whether or not Mr. Yerian needs the money, as is discussed in Wizz. I think as it's in an IRA, he doesn't need it. But I think under the second test of whether prompt review is necessary, I think it is in the sense that if review is not given, the money will be spent, and then this whole issue will be moot. So if we wait to appeal after the money has been distributed by the trustee to all the creditors How much money are we talking about? It was $350,000 in the IRA. It was the value. The IRA consisted of assets including some real estate, actually some cars. It was kind of a bizarre IRA. But that was the original value. Are there other separate issues still pending in the bankruptcy court? No issues that I know of. What are they? No issues I know of pending in the bankruptcy court other than the procedural, ministerial matters that you mentioned, Your Honor. The only ongoing issue I know of is the state court lawsuit against the third-party spouse. And so, Your Honor, we believe this is final and there's no other time that would what seems to me your argument has to be it's final enough, even though it isn't really final. Well, and that's exactly the third part of WIS. The third part of the test is you look at a practical, not a technical, analysis. And bankruptcy is a strange animal because you have this ongoing process that lots of little disputes are getting ruled on, and then you get to the end, and a lot of things are moot if you don't get review before the end. And so under WIS, I think you can take a practical approach. In this case, practically, I think it has to be. So really at the heart of your argument is the proposition that if we don't hear it now and you prevail, it would be very difficult to repair your interests if the properties are sold, dissipated, or if they're all gone with the wind. Yeah, exactly, Your Honor. I think the property, the money is going to get distributed out to creditors. You're not going to be able to get it back. Why don't you go to the merits? Thank you, Your Honor. So we have this gap period between when a disqualifying event occurs inside of a plan and then when the IRS or tax court gets around to ruling on that. So you have this time period. Actually, I'm going to interrupt you because I'm not entirely sure that's true under the structure of the statute. Do you have a copy of the 222.21 statute in front of you? I do, Your Honor, at least part of it. So if you look at subsection, if you look at 2A.1, it discusses plans that have been pre-approved by the IRS, right? Yes, Your Honor. And then you look at subsection 2, and that discusses plans that have been determined by the IRS to be exempt from taxation. And then 3 appears to be plans that were neither pre-approved nor subsequently determined by the IRS. Does your client have any sort of determination letter from the IRS that his plan was exempt from taxation? We do not have a determination letter, but what we have is the expert report and expert testimony in the record of Mr. Van Hyda, who is the trustees expert or the appellees expert, stating that the plan was proper when originally incorporated. That's the evidence in the record. That's a different thing, though, than a determination by the IRS that that was proper, correct? Yes, Your Honor. And so if you look at the plan documents that are in the record, they are essentially based on forms that Mr. Van Hyda has testified were proper forms. So would that be, would those be forms that had been, would that categorize the plan as pre-approved by the IRS? That's our position, Your Honor, yes. So shouldn't you be operating under subsection 1 rather than subsection 2? We operated under both in an interest of caution because of the possibility it could be interpreted under both subsection 1 or subsection 2. But my opinion, based on Mr. Van Hyda's report, is that it's a pre-approved plan form. And have you argued, your arguments to us have been about subsection 2, correct? The arguments that have been in the briefs, I believe we've mentioned both statutes. And so our position is that the statute was amended in 2005 to protect the IRA during that gap period. And what the key thing to look at is to distinguish it from the bankruptcy statute. The bankruptcy statute under 522B3C also provides for protection from IRAs, but that statute makes tax-exempt status of the plan immediately equivalent to creditor-exempt status, meaning as soon as a disqualifying transaction occurs, the creditor-exemption status is immediately lost. And Florida's 22221 used to be interpreted that way prior to 2005. But in 2005, you have these amendments. And the amendments state that now these IRAs or these plans that include these accounts are exempt unless and until a final determination that tax exemption has been lost is made in a proceeding that is final and non-appealable. And so that seems to clearly imply that some later determination needs to be made before a disqualifying event can take away creditor-exempt status. But it isn't clear what the proceeding is or who's supposed to be making these decisions at the proceeding. And so I think the only way to get a clear answer on that question is what's the proceeding and who makes the decision is to look at the legislative history, which thankfully is very clear, which is cited in the briefs, which states that the purpose of the statute is to increase creditor protection. And the legislative history mentions that there was litigation by creditors trying to levy on IRAs before the IRS or the government had gotten to the IRA or made a determination. They were trying to force the trial court to make the tax-exempt status determination. And the legislative history clearly states that the IRS and tax courts will make the determination regarding the tax-exempt status of a plan under this bill. And so it's taking that power away from the trial court. I just wanted to tell you, you've sort of gone over your time. You still have time left if you want to, but you will be eating into it. Owing to my rebuttal, Your Honor? Yes, sir. Understood. Thank you, Your Honor. And with that, Your Honor, we ask that the court overrule the denial of the exemption and declare the IRA to be exempt. Can I ask you one question? What do you say is the governing document of your client's IRA? So there are two documents in the record. There is an IRA agreement and there is an IRA LLC agreement, both in the record which govern the IRA and other forms and include the terms of the plan with respect to what transactions you can and can't incur and what the purpose of the IRA is. And do you categorize one or both of those as the governing document? Both of them. Thank you. Thank you. Good morning. Morning, Your Honors. May it please the court. Kevin Robinson. I represent the appellee, Richard Weber, as the Chapter 7 trustee of the appellant's bankruptcy estate. Judge Marcus, you asked counsel for the appellant to address the jurisdictional issue first. I'll do the same if that's what the court desires. The first thing I'd like to note is that between the time that the parties conducted their jurisdictional briefing and today, there has been a change in circumstances in the bankruptcy, and I think it's important to point that out. One thing that the trustee noted, it goes from page 4 to page 5 of our jurisdictional brief, is that at the time that we were conducting the jurisdictional brief, there was additional litigation pending. There was an appeal that had been filed on another issue, a claim of exemption or a fraudulent transfer with respect to money transferred to the debtor's non-filing spouse. That was on appeal to the Middle District. It went back to the Bankruptcy Court on remand. Since that time, there has been a trial on remand, and it has been resolved. So the appeal that we reference in our jurisdictional brief is no longer pending. That has turned into what counsel mentioned, which is the state court litigation in which the bankruptcy trustee, Mr. Weber, is attempting to turn the judgment for fraudulent transfer that he obtained against the non-filing spouse into actual assets of the estate. So it's an equitable lien proceeding with respect to the— It's a collection action. Yes, Your Honor, it is. That's correct. How much is involved in that? So the principal amount of the judgment against the non-filing spouse was roughly $150,000, so it's not insubstantial. So is he trying to sell the property or something? You say it's an equitable lien? Yes, Your Honor, so the— Maybe there's all the mortgages ahead of it, so he's not going to ever get anything, or you don't know? We believe that there's substantial equity in the property. We also believe that this particular matter, in light of the very specific findings that the bankruptcy court made with respect to the fraudulent transfer, we believe that there's a very high likelihood of success on the merits of our equitable lien claim, specifically because the bankruptcy judge traced the specific funds that were fraudulently transferred to the non-filing spouse into the purchase of the homestead, and so for that reason, we feel relatively confident in success on the merits of the equitable lien claim and ultimately a collection of at least some portion of that judgment. Do you agree with opposing counsel's contention that if we don't decide this issue now, it will become moot because the assets will be distributed and irrecoverable? Your Honor, it's hard to rebut the argument that the next and remaining stage in the bankruptcy, again, after all of the assets have been marshaled, which includes the equitable lien litigation against the non-filing spouse, once that occurs, the next step in the bankruptcy is for the trustee to propose a plan of distribution. It will either be objected to or not. Once the bankruptcy court decides the objections and approves a plan of distribution, then the estate's assets are distributed out. So if you use that as the starting point for an appeal period, I certainly can't contest that the assets have at that point been distributed out. Why isn't that reason enough for us to exercise jurisdiction? It's kind of a debatable area. It's loose enough in the bankruptcy field so that we probably could keep jurisdiction and go to the merits. Your Honor. I think you can make a pretty good argument the other way. That being the case, and given what you've said, why doesn't that answer it? Why shouldn't we just take it, keep it, and decide it on the merits? Your Honor, the trustee did not object to the jurisdiction of this court on appeal for a reason. The trustee would, frankly, like to have this adjudicated on the merits the longer this remains open. The answer is you only responded because we asked you to. Yes, Your Honor. Okay. With respect to the merits of the underlying issue, respectfully, I think that the appellant misframes the issue. Here's why the appellant misframes the issue. The appellant frames this issue as does the plan for the self-directed IRA, does the plan itself satisfy the internal revenue code requirements, and has the plan subsequently been determined to be noncompliant by the IRS or a tax court? But that's not the issue. If we look at the statutory text of Florida Statute 222.21, both subsections 1 and 2, there's a two-part test, which the district court correctly pointed out. The question isn't just does the plan satisfy the internal revenue code, but also has the debtor, quote, maintained this particular asset in accordance with a plan that satisfies the internal revenue code? Now, here are the undisputed facts from the record. The plan itself is in the record on appeal at 12-10, and the IRA agreement itself, it contains its general terms and conditions. It contains a section that's entitled, quote, prohibited transactions. That section of the IRA agreement notifies the IRA participants that a, quote, prohibited transaction is a transaction between a plan and a disqualified person that is prohibited by law. It goes on to give examples to the participants of what prohibited transactions are, and they include, quote, a transfer of plan income or assets to, or the use of them by or for the benefit of a disqualified person. It then goes on to identify what a disqualified person is as, quote, the owner of the plan, and, quote, any member of your family, i.e. your spouse. Now, the undisputed facts in the record are that the appellant engaged in prohibited transactions because he used IRA assets to buy two vehicles that were titled in his name and his wife's name, a prohibited transaction because he used plan income and assets for the benefit of himself and a spouse. He also used real property that was owned by the IRA in the form of a condominium located in Puerto Rico for personal purposes. Now, the testimony— I just look—I think we all know these were egregious violations of the requirements for an IRA. I mean, it doesn't seem to be a difficult issue. The difficult issue is interpreting the Florida statute and maintained—and Judge Grant just asked about 222.211 and 2, and I just looked at the briefs. Everybody just talks about 2. I don't see anybody talking about 1. Am I correct? It looks like it's all been litigated under 222.212. I believe that to be correct, Your Honor, but I'm happy to address 1 as well, and the reason— Well, which one would it be? Was it just a pre-approved by the IRS? I'm not sure ultimately it makes any difference because the other one still requires it be maintained in accordance with the plan. You're just saying the plan says you can't have prohibited transactions. They had prohibited transactions. So, Your Honor, just got to the heart of what my response would have been. It's a distinction that I think is without a difference because the applicable language is identical. Tell us here. Has this just been a pre-approved plan, or is this a plan that has been determined by the IRS to be exempt? Your Honor, I think that counsel accurately summarized the record evidence in that the only record evidence on that issue is the testimony of the expert, Mr. Van Hyda, where he discusses this as being an approved plan, but I would suggest to the court that the record does not contain any evidence as to whether this is either a pre-approved plan or a plan that has been determined to be exempt from taxation. I don't believe that the issue of does sub-1 or sub-2 apply was determined by the bankruptcy court, and so I don't believe that's in the record. I'll say that even though it appears that that's not important under your argument, it's important for us to know that because whatever interpretation we have of these statutes is going to imply in other cases. And I would suggest to the court that the record before Your Honor simply doesn't answer that question, and so sitting here today, I don't want to mislead the court as to whether this is either pre-approved. So it would be fair to say we ought to interpret sub-section 2. That's the relevant one here. Sub-section 2 is what the parties argued in their briefs. That's correct, Your Honor. With respect to the interpretation of that sub-section and the language, specifically the language maintained in accordance with, that's the language that is directly applicable to this case, and that's the language that the district court correctly relied upon when it affirmed the bankruptcy court's judgment. Now, maintained, if Your Honors look at the briefings submitted by the parties, you'll notice that while the statute says maintained, and while the district court notes that language maintained, the appellee's briefing often substitutes the word established for maintained. I think the appellee does that because using the word established with its unique meaning is necessary for this court to accept the appellee's logic. The appellee wants this court to adopt a statutory framework that says that so long as an individual establishes a self-directed IRA under a form that has been approved or pre-approved or determined to be appropriate by the IRS, then we get to keep the assets in this IRA as creditor-exempt so long as there hasn't been a final, non-appealable determination by the IRS or a tax court that the plan is no longer acceptable. That doesn't make any sense because, one, it ignores the obligation of the individual to maintain his IRA in accordance with this plan that's been pre-approved. It also establishes a statutory framework that encourages fraud. Anyone could go out and place all of their assets in a self-directed IRA that simply uses a form that has been pre-approved by the IRS. As soon as the IRS catches on to the gig and notes that the individual has been misusing the assets, engaging in prohibited transactions, the individual can continue engaging in prohibited transactions without any consequence so long as the moment before a final, non-appealable determination has been made by the IRS or a tax court, he files bankruptcy. That's the effect of the appellant's argument, and that certainly isn't what the Florida legislature could have intended. In fact, that's not what the plain language of the statute says. Council notes some legislative history from one of the chambers of the Florida legislature, but frankly it's unnecessary to look at the legislative history because the language of the statute itself is clear. The debtor had to maintain the IRA in accordance with the plan. Black's Law Dictionary defines maintain as a verb meaning, quote, to continue something. By very definition, it's not a static term. It requires an active and continuous compliance with the plan. On the other hand, if the court were to allow the appellant to engage in a sleight of hand where we substitute the word establish for maintain, well, then his argument makes sense because establish is defined as meaning to settle, make, or fix permanently, to enact permanently. It's a static term. So as long as a debtor establishes his self-directed IRA under an approved form, then he gets to engage in fraud, engage in misconduct, engage in prohibited transactions, and as long as he files bankruptcy before he's caught, he gets to maintain those assets as creditor exempt, and that's not the intent of the statute. An issue that wasn't argued by the appellant, at least not in any length in his argument, but it was raised in his briefing, so I'll address it here. The bankruptcy court itself certainly had jurisdiction to decide this issue. The appellant's briefing suggests that only the IRS or a tax court could decide this. That is inconsistent with, I think, the well-established law. 28 U.S.C. 157b2b defines what the core proceedings of a bankruptcy court are. Those core proceedings specifically include the, quote, allowance or disallowance of exemptions from property of the estate, and the bankruptcy courts have a long history of deciding both federal exemptions and state court exemptions. Bankruptcy courts routinely decide whether, for instance, in Florida, the homestead exemption will apply to debtor's property, and so I don't think there's any support in the case law with respect to the argument that the bankruptcy court didn't have any jurisdiction to decide this issue. I would last note that the appellant hasn't cited a single case in which any court has found that a debtor can engage in prohibited transactions and still maintain his assets as creditor-exempt. On the other hand, the trustee has cited a case law admittedly applying the federal statute, which is very close to the state statute, the In re Willis case, where prohibited transactions, the mere existence of prohibited transactions, was enough to defeat the creditor exemption. And unless the court has any further questions, I'm out of time and I'll rest. Thanks very much. Thank you. Mr. Nardella, you've reserved four minutes. Thank you, Your Honor. Your Honors, I'd like to talk about the language, the maintained language that I think is at issue here. The first thing I'd like to point out is if you look at the whole context of 22221, you'll see it never mentions individual retirement accounts. It doesn't say, you know, individual retirement accounts are exempt. Instead, it says funds or accounts maintained in a plan, right, maintained in accordance with a plan under various sections, including Section 408, are exempt from creditors. And so the usage of that phrase, maintained in accordance with Section 408, is first being used to denote what it is that's exempt. It's a plan that's maintained under Section 408, which is an IRA. So it's basically another way of saying an IRA. In addition, Your Honor, if the test is to look at the word maintained and say that's a question of whether there's been a disqualifying transaction, then it reads out the second part of the statute that was amended in 2005. Courts have a requirement to try to make all parts of the statute work. And so if you turn this into an initial test where, oh, there's been a disqualifying transaction, it's no longer maintained, then what's the point of the later final determination? Why is the amendment to... He says the plan document right here... Yes, Your Honor. ...for this IRA has the prohibited transaction language in it. That's correct, Your Honor, and I think it's some unique IRA... And does it parrot the same kind of IRA language? The IRA agreement does, Your Honor. Yeah, so why wouldn't it not be maintained in accordance with the plan? And the plan's right there saying you can't have prohibited transactions. There were, and therefore, it's not maintained in accordance with the plan. I can't get past that, so help me. Yes, Your Honor. That seems fairly simple to me. Well, I think if you read it that way, then it reads out the second half of the statute that was added in 2005. And so my reading of it, Your Honor, is that it's identifying it as an IRA, and by maintained, it means it's in an account that is under a plan that has been approved and is in compliance. And so the... You would never have a violation. It would always be exempt until the IRS did something. That's exactly right, Your Honor. That's what you say. Exactly, that's exactly... So if I have $100,000 in my IRA account and I proceed over a period of time to withdraw $80,000, I take out $10,000 a month, by your take, I would have maintained it in accordance with the plan or the governing instrument? Yes, Your Honor, in this sense, because the argument is that the disqualifying transaction does not mean that the plan and the account that's in the plan was not maintained under Section 408. The account is still in an IRA. It hasn't been determined... So even if I leave only $1 in that account and I've dissipated $99,000, I'm still maintaining it in accordance with the plan? The $1 that's left, yes, Your Honor. So here's one reason that your argument is not adding up to me. The action of the person, of your client, is maintained. He's supposed to maintain this account in accordance with the master plan. And your argument is, unless it's been subsequently determined that there's been a problem. But the subsequent determination, according to the text of the statute, is about the plan or the governing instrument. That the plan or governing instrument is not exempt from taxation. Not that the executor of the plan, not that the owner of that IRA has acted in a way that was inconsistent with the plan's documents. Why isn't this language related to the documents of the plan rather than the actions of the person who maintains the IRA? Yes, Your Honor. And so it took me a while to figure that out, but it comes down to the IRA nomenclature. So what happens is you have an account, this individual retirement account, and it exists. It's not tax-exempt. It's the plan that's tax-exempt. And so the IRA account exists as a component of the plan, and when the tax exemption is lost, it's not the account that loses the tax exemption under the way this is the nomenclature of the issue. It's the plan that loses, the retirement plan. Your retirement plan now loses its tax-exempt status as to its remaining assets. Right, but the statute in Sections 1 and 2 sets out different ways that these plans can be either pre-approved or determined. It seems to me that it makes more sense for all this language to relate to the plans, and the maintenance requirement is what's related to the person who has the plan. If that were true, Your Honor, the first response would be I don't understand why they would have changed the statute at all, what difference it would have made to have made the change. But second of all, Your Honor, it would make the statute essentially a non-sequitur because it's saying if you have a plan that's been determined by the IRS to be approved, it's exempt unless the IRS determines it's not been approved. And I think that just carries you nowhere. So I think in order to make the statute make sense, you have to read it in the context of the legislative history, which is saying that we don't want creditors to be able to have tax-exemption issues determined by a trial court while trying to levy on an IRA account inside of a plan if they're trying to claim that the plan has lost its tax-exempt status. Thanks very much. Thank you. We'll move on to the...